## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

VERMONT MUTUAL INSURANCE
COMPANY,

Plaintiff,
  v.                                                  3:09-CV-00445 (CSH)

PAUL E. CICCONE, PAUL E. CICCONE
d/b/a PC PROPERTIES, ELM RIDGE
DEVELOPMENT, LLC and MIGUEL
MARTINEZ,

Defendants.

## ORDER REGARDING SUPPLEMENTAL BRIEFING

**HAIGHT, Senior District Judge:**

This action for a declaratory judgment arises out of a commercial liability and business

owner's policy ("the Policy") issued by Plaintiff Vermont Mutual Insurance Company ("Vermont

Mutual") to Paul E. Ciccone, Karen Ciccone, and Elm Ridge Development, LLC (collectively "the

Ciccones"), with a policy period running from March 1, 2007 through March 1, 2008.  Under the

Policy, Vermont Mutual agreed to defend the Ciccones against any suit alleging bodily injuries

caused by an occurrence within the coverage territory during the policy period, and to indemnify

the Ciccones with respect to any liability adjudged against them in such a suit.  Those obligations

on the part of Vermont Mutual were subject to specific policy exclusions that included workers'

compensation, employer's liability, and professional services.

On or around August 31, 2007, within the policy period, Miguel Martinez fell from a roof

1

upon which he was working during renovations to a building at 171 Garfield Avenue, New London, Connecticut owned or occupied by Paul Ciccone or Elm Ridge Development, LLC. Martinez claims that the fall caused him serious injuries. In December 2008, he filed a complaint to recover for those injuries against Paul Ciccone individually and as the sole owner of a business called "PC Properties," and against Elm Ridge Development, LLC (hereafter, the "Defendants"), in Connecticut Superior Court, Judicial District of New London (hereafter, "the Underlying Action"). On or about May 18, 2010, Martinez filed a revised complaint against the Defendants in the Underlying Action, seeking damages for those injuries. That revised complaint is the operative pleading for purposes of this Ruling. The Underlying Action is advancing on the Connecticut court's trial calendar.

On March 19, 2009, after Martinez filed the initial complaint in the Underlying Action but before he filed the revised complaint, Vermont Mutual commenced the captioned action in this Court by filing a declaratory judgment complaint against the Defendants [Doc. 1] ("the DJA Complaint"). The First Count of the DJA Complaint begins at ¶¶ 6-17 with a series of factual allegations drawn from a number of sources outside of the Underlying Action's pleadings which purport to show, in Vermont Mutual's perception, that at the time of his accident, Martinez was an employee of the Defendants. The DJA Complaint concludes with prayers for judicial declarations that Vermont Mutual is "not obligated to defend Paul E. Ciccone individually or d/b/a PC Properties, or Elm Ridge Development LLC as to the claims asserted against them" in Defendant Martinez's Underlying Action "WHEREFORE" prayer at sub-paragraph (a));[1] that

---

[1] Vermont Mutual named Martinez as a party defendant in its declaratory judgment action against the Defendants, but asserts no claims for relief against Martinez directly.

Vermont Mutual "is not obligated to indemnify" those DJA Defendants "for any amounts Defendant Martinez recovers against them" in the Underlying Action, sub-paragraph (b); that Vermont Mutual "is not obligated to defend" the DJA Defendants "as to Defendant Martinez's workers' compensation claims against them," sub-paragraph (c); and that Vermont Mutual "is not obligated to indemnify" the DJA Defendants "as to Defendant Martinez's workers' compensation claims against them," sub-paragraph (d).  In the body of the DJA Complaint, these prayers are preceded by six Counts: two each for the Policy exclusions of workers' compensation (Counts First and Second); employer's liability (Counts Third and Fourth); and professional services (Counts Fifth and Sixth).

The case is presently before the Court on the Defendants' motion pursuant to Rule 56, Fed.R.Civ.P., for partial summary judgment dismissing Counts Third and Fifth of the DJA Complaint.  The manner in which the DJA Complaint is constructed is illustrated by Counts Third and Fourth, relating to the Policy exclusion for employer's liability.  The Third Count alleges that at the time of the accident, Martinez "was an employee" of Defendants, and that therefore "the monetary damages Martinez seeks from [Defendants] in the State Court action are excluded from coverage by virtue of the Policy's exclusion for Employer's Liability." [Doc. 1] at ¶20.  It follows, the Third Count continues, that "Vermont Mutual is therefore entitled to a declaration that it does not have a duty to defend [Defendants] as to [Martinez's] claims against them in the State Court action."  ¶ 21.  The Fourth Count repeats and incorporates  ¶¶ 1-20 of the DJA Complaint, from which the conclusion is alleged that "Vermont Mutual is therefore entitled to a declaration that it does not have a duty to indemnify [Defendants] as to [Martinez's] claims against them in the State Court action." ¶ 21.  The same formula is repeated with respect to the other Counts, which relate

3

to the other exclusions in the Policy: workers' compensation and professional services.

¶ 20 of the DJA Complaint's Third Count, with respect to the Policy exclusion for employer's liability, is repeated like a *leitmotif* with respect to the other two Policy exclusions. Vermont Mutual's theory of the case in this declaratory action is that since facts underlying the damages Martinez seeks from the Defendants in the Underlying Action render those damages excluded from coverage under the Policy by one exclusion or another, Vermont Mutual has no duty to defend the Defendants in the Underlying Action and no duty to indemnify the Defendants from liability found against them in the Underlying Action.  In the case at bar, Vermont Mutual seeks judicial declarations from this Court to those effects.  While Vermont Mutual has thus far paid for the Defendants' legal defense to the Underlying Action, subject to a reservation of its right to deny coverage under the Policy, it would appear that by its declaratory judgment action, Vermont Mutual seeks to put an end to a continuing duty to defend the Defendants.  In aid of that effort, Vermont Mutual proffers,  or expresses a determination to obtain, evidence from a number of sources, some outside the pleading in the Underlying Action, which tend to show that one or another of the Policy exclusions applies to Martinez's claims against the Defendants.

The Defendants move for summary judgment on the Third and Fifth Counts of Vermont Mutual's DJA Complaint.  The case for the Defendants is that the DJA Complaint's allegations have the effect of making the duty of Vermont Mutual to defend the Defendants in the Underlying Action against the Defendants conditioned upon Vermont Mutual's duty to indemnify the Defendants for any liability under that action.  That proposition, the Defendants contend, is contrary to Connecticut case law governing an insurance company's duty to defend its insured in circumstances such as those presented by the case at bar.

4

While the briefs of counsel on the present motion cite numerous Connecticut and Second Circuit cases on that question, there is a significant gap in the advocacy because the Defendants' main brief in support of their summary judgment motion [Doc. 37-1], and Vermont Mutual's brief in opposition [Doc. 39], were submitted before Martinez filed his revised complaint in the Underlying Action.  The Defendants' reply brief, [Doc. 43] at 1, makes passing mention of the revised complaint, attaches it as an exhibit, and dismisses what is now the operative claim against them with the off-handed remark that it "does not appear to affect [their] arguments in regard to the Motion for Summary Judgment."  Further, Plaintiff's counsel, in an April 24, 2012 motion for pretrial conference [Doc. 46], appears to make reference to a section of Martinez's initial complaint, in which Paul Ciccone's alleged testimony is cited, that does not appear in Martinez's revised complaint.

These submissions of counsel are less than satisfactory, as they either fail to address Martinez's revised complaint at all, or fail to address it in any substantial way.  As the Second Circuit said in *Stamford Wallpaper Company, Inc. v. TIG Insurance*, 138 F.3d 75, 79 (2d Cir. 1998):

> Under Connecticut law, an insurer's duty to defend is broader than its duty to indemnify.  The general rule is that if an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured.  Where a complaint in an action states a cause of action against the insured which appears to bring the claimed injury within the policy coverage, it is the contractual duty of the insurer to defend the insured in that action regardless of the duty of the insurer to indemnify.  The existence of a duty to defend is determined on the basis of what is found within the four corners of the complaint; it is not affected by facts disclosed by independent investigation, including those that undermine or contradict the injured party's claim.

(citations to Connecticut cases, internal quotation marks, and ellipses omitted; emphasis in original).

5

What "is found within the four corners of the complaint" trumps all other questions that might arise respecting an insurance company's duty to defend.  It "is well established that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that *the claim may be meritless or not covered*."  *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 274 Conn. 457, 464 (2005) (internal citation omitted; emphasis added).  "In contrast to the duty to defend, the duty to indemnify is narrower: while the duty to defend *depends only on the allegations made against the insured,* the duty to indemnify depends upon the facts established at trial and the theory under which judgment is actually entered in the case."  *DaCruz v. State Farm Fire & Cas. Co.*, 268 Conn. 675, 688 (2004) (citations and internal quotation marks omitted; emphasis added).

*Stamford Wallpaper*, 138 F.3d 75, illustrates in an instructive manner the way in which "the allegations made" against the insured determine the insurer's duty to defend.  Stamford, the insured, was a wallpaper manufacturing company.  "CERCLA claims"[2] were made against the company, taking the forms of a third-party complaint seeking contribution in a cost-recovery action for the clean-up of a landfill, and two letters from the Environmental Protection Agency informing Stamford that it was a potentially responsible party in connection with the disposal of hazardous waste at two other disposal sites.  Stamford had purchased from defendant TIG a liability insurance policy which excluded claims against Stamford arising from the discharge of pollutants, except that "this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental."  138 F.3d at 78.  TIG disclaimed coverage of the CERCLA claims against Stamford and

---

[2]  "CERCLA" is an acronym for the federal Comprehensive Environmental Response, Compensation and Liability Act.

6

refused to defend the company against them; Stamford sued TIG in the district court for breach of the insurance contract.  The district court dismissed the action.  The Second Circuit affirmed.

Having cited Connecticut cases for the proposition that the "existence of a duty to defend is determined on the basis of what is found within the four corners of the complaint," the Second Circuit then carefully examined the three pollution claims, and posed the decisive question on the existence *vel non* of the insurer's duty to defend as follows:

> The question is whether any of the three claims against Stamford includes an allegation that falls "even possibly" within the scope of the policy, as drawn by the pollution exclusion and the "sudden and accidental" exception to that exclusion.  We agree with the district court that none of the three claims contains such an allegation.

138 F.3d at 79.  The same rule applies to the case at bar.  Vermont Mutual's duty to defend its insureds against Martinez's claims depends upon whether the *revised complaint* in the Underlying Action contains any allegation or allegations which "even possibly" fall within the Policy and outside all Policy exclusions.  Under well-established Connecticut case law, acts outside the revised complaint's four corners cannot be used to show that Vermont Mutual did not have a duty to defend. *See, e.g., QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 352 (2001)*; Hartford Cas. Ins. Co. v. Litchfield Mut. Fire. Ins. Co*, 274 Conn. at 463-64*, Missionaries of the Company of Mary, Inc. v. Aetna Cas. & Sur. Co.*, 155 Conn. 104, 112 (1967), *Nationwide Mut. Ins. Co. v. Mortensen*, 222 F.Supp. 2d 173, 181 (D. Conn. 2002).

Given the authorities cited and quoted *supra*, Martinez's revised complaint is of central importance to the case.  That is because it is the operative pleading which states the claims Martinez currently asserts against the insured Defendants.  Under Connecticut's general rule, this is the pleading within whose "four corners" Vermont Mutual's duty to defend its insureds either does or

does not exist.  In consequence, counsel for Vermont Mutual and the Defendants must address and analyze that pleading specifically, a task the present briefs fail entirely to undertake.  The Court directs further briefing in the case.  Counsel's responsibilities in the supplemental briefing are crystal clear, in light of the cited authority, and are summarized thus:

(1) Vermont Mutual's brief must demonstrate specifically – conclusory arguments will not suffice – that Martinez's revised complaint in the Underlying Action contains no allegation whatsoever that even possibly falls within the Policy and outside its exclusions; or, to state the converse, that every allegation in the complaint falls within one or another of the Policy exclusions upon which Vermont Mutual relies.

(2) The Defendants' brief must identify specifically – conclusory arguments will not suffice – each allegation in Martinez's revised complaint that, definitely or even possibly, falls within the Policy and is not barred by any Policy exclusion.

I add a word of clarification with respect to the briefing mandated by this Order.  On pages 3-5 of its brief in opposition to the present motion [Doc. 39], Vermont Mutual argues that the specific language of the Policy limits its obligation to defend an insured to a significantly more narrow scope than that generally required by Connecticut law.  Vermont Mutual's contentions, as expressed in its brief, are that "the Policy expressly limits Vermont Mutual's defense obligation to claims that fall within the Policy's indemnity coverages," Brief at 3; that "under the Policy, Vermont Mutual's ongoing defense obligation does not extend beyond claims that actually fall under the Policy's coverage, as determined through this coverage action," *id*. at 4; and that "in this coverage action, Vermont Mutual intends to prove that there is no indemnity coverage for the claims asserted against the Ciccone defendants in the underlying Martinez action, and therefore, no ongoing duty

8

to defend the Ciccone defendants as to those claims," *id*. at 5.[3]

If those contentions are sound and that proof is made, then presumably Vermont Mutual would conclude (its brief does not do so explicitly) that the established Connecticut rule is supplanted: the existence of the insurer's duty to *defend* is determined not by the claims a victim makes against the insured, but rather by proof of whether the policy obligates the insurer to *indemnify* the insured for a particular liability to the victim. That is a quite different proposition, and if Vermont Mutual is correct in its perceptions, it becomes irrelevant and a waste of the parties' and Court's time to parse a victim's claims against an insured in order to determine the existence *vel non* of the insurer's duty to defend the insured against them.

Notwithstanding that possibility, the exercise mandated by this Order is necessary because the scenario envisioned by Vermont Mutual is *only* a possibility. The Court notes Vermont Mutual's contentions, but reserves judgment upon them. Ultimately those contentions may fail. If they do fail, then under Connecticut's established rule Martinez's revised complaint against the Defendants retains its place as the determinative pleading, to whose four corners the Court must first look in deciding whether Vermont Mutual is under a duty to defend. In consequence, counsel must give careful attention to and meticulously analyze what the revised complaint claims and what it does not claim.

---

[3] Vermont Mutual has not expended any recent energy in proving the propositions referred to in text. The Court notes that Vermont Mutual is supplying and paying for the Defendants' defense in the Underlying Action, and expresses its willingness "to stipulate that it does not to seek [*sic*] reimbursement from the Ciccone defendants for the defense costs Vermont Mutual incurs on their behalf in that action, up to the point in time when Vermont Mutual obtains a declaratory judgment of no coverage." Brief [Doc. 39] at 3 n. 2. The Court notes counsel's statement, and expresses no view as to whether Vermont's proferred stipulation is no more than what the law would require of it in any event.

That is the purpose of the supplemental briefs.  Indeed, it is their only purpose.  The Court reserves decision on this argument raised by Vermont Mutual in its brief, and upon all other questions raised by either party in any brief on this motion.  The supplemental briefs are to be limited to the exercises summarized in paragraphs (1) and (2) *supra*.  Argument on any other issues will not be considered by the Court.

On or before July 31, 2012, the parties are directed to file and serve simultaneously supplemental briefs that comply with this Order.  Either party may, if so advised, file and serve a reply brief on or before August 10, 2012.  If the Court desires oral argument, counsel will be advised by Chambers.

Proceedings in this case are STAYED pending the Court's further Order.

It is SO ORDERED.
Dated:  New Haven, Connecticut
July 19, 2012

　　　　 /s/ Charles S. Haight, Jr.
　　　　Charles S. Haight, Jr.
　　　　Senior United States District Judge