## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| VERMONT MUTUAL INSURANCE COMPANY,<br><br>               Plaintiff,<br>  v.<br><br>PAUL E. CICCONE, ET AL.,<br><br>          Defendants. | 3:09-CV-00445 (CSH) |

## RULING ON DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

**HAIGHT**, Senior District Judge:

### I.      Introduction and Summary of Facts

As the Court previously discussed in its Order Regarding Supplemental Briefing [Doc. 47], this action for a declaratory judgment arises out of a commercial liability and business owner's policy ("the Policy" or "the insurance policy") issued by Plaintiff Vermont Mutual Insurance Company ("Vermont Mutual") to Paul E. Ciccone, Karen Ciccone, and Elm Ridge Development, LLC (collectively "the Ciccones"), with a policy period running from March 1, 2007 through March 1, 2008.  Under the Policy, Vermont Mutual agreed to defend the Ciccones against any suit alleging bodily injuries caused by an occurrence within the coverage territory during the policy period, and to indemnify the Ciccones with respect to any liability adjudged against them in such a suit. Vermont Mutual's obligations under the insurance policy were subject to specific policy exclusions that included workers' compensation, employer's liability, and professional services.

In August of 2007 – i.e., within the policy period – Miguel Martinez fell from a roof upon

which he was working during renovations to a building at 171 Garfield Avenue, New London, Connecticut, which Martinez alleges was either owned or occupied by Paul Ciccone or Elm Ridge Development, LLC.  Martinez claims that the fall caused him serious injuries.  In December 2008, Martinez filed a complaint in Connecticut Superior Court, Judicial District of New London ("the Underlying Action") to recover for those injuries.[1]  This 2008 complaint was made against Paul Ciccone both individually and as the sole owner of a business called "PC Properties," and against Elm Ridge Development, LLC (hereafter, the "Defendants").  The Underlying Action is advancing on the Connecticut court's trial calendar.  In May of 2010, Martinez filed a revised complaint against the Defendants in the Underlying Action, again seeking damages for the injuries he claims were sustained in a fall at 171 Garfield Avenue.  That revised complaint ("the Underlying Complaint") is the operative pleading for purposes of this Ruling.

In March of 2009, Vermont Mutual commenced the captioned action in this Court by filing a declaratory judgment complaint against the Defendants [Doc. 1] ("the DJA Complaint").  The First Count of the DJA Complaint begins at ¶¶ 6-17 with a series of factual allegations drawn from a number of sources outside of the Underlying Action's pleadings which purport to show, in Vermont Mutual's perception, that at the time of his accident, Martinez was an employee of the Defendants. The DJA Complaint concludes with prayers for judicial declarations  that Vermont Mutual is "not obligated to defend Paul E. Ciccone individually or d/b/a PC Properties, or Elm Ridge Development LLC as to the claims asserted against them" in Defendant Martinez's Underlying Action

---

[1] *Martinez, Miguel v. Ciccone, Paul et al.*, Docket No. KNL-CV08-5009800-S, filed on December 16, 2008 in the Connecticut Superior Court in the Judicial District of New London.

"WHEREFORE" prayer at sub-paragraph (a));[2] that Vermont Mutual "is not obligated to indemnify" those DJA Defendants "for any amounts Defendant Martinez recovers against them" in the Underlying Action, sub-paragraph (b); that Vermont Mutual "is not obligated to defend" the DJA Defendants "as to Defendant Martinez's workers' compensation claims against them," sub-paragraph (c); and that Vermont Mutual "is not obligated to indemnify" the DJA Defendants "as to Defendant Martinez's workers' compensation claims against them," sub-paragraph (d).  In the body of the DJA Complaint, these prayers are preceded by six Counts: two each for the Policy exclusions of workers' compensation (Counts First and Second); employer's liability (Counts Third and Fourth); and professional services (Counts Fifth and Sixth).[3]

The case is presently before the Court on the Defendants' motion pursuant to Rule 56, Fed.R.Civ.P., for partial summary judgment dismissing Counts Third and Fifth of the DJA Complaint.  The Third Count alleges that at the time of the accident, Martinez "was an employee" of Defendants, and that therefore "the monetary damages Martinez seeks from [Defendants] in the State Court action are excluded from coverage by virtue of the Policy's exclusion for Employer's Liability." [Doc. 1] at ¶20.  It follows, the Third Count continues, that "Vermont Mutual is therefore entitled to a declaration that it does not have a duty to defend [Defendants] as to [Martinez's] claims

---

[2]  Vermont Mutual named Martinez as a party defendant in its declaratory judgment action against the Defendants, but asserts no claims for relief against Martinez directly.

[3]  Vermont Mutual also avers that it has informed Defendants that it believes that they have failed to cooperate with Vermont Mutual regarding investigation of the subject incident, thus prejudicing Vermont Mutual, and that, by entering into a settlement in the OSHA enforcement action without Vermont Mutual's knowledge or consent, Defendants have further violated the insurance policy's notice and cooperation provisions.  Accordingly, Vermont Mutual states in the DJA that it "reserves all of its rights to decline coverage for any and all liability claims arising from the subject incident on these bases as well." [Doc 40-2] at 8.

against them in the State Court action." ¶ 21.  The Fifth Count likewise alleges that "the monetary damages Martinez seeks from [Defendants] are excluded from coverage by virtue of the Policy's exclusion for Professional Services," and, accordingly, that "Vermont Mutual is therefore entitled to a declaration that it does not have a duty to defend [Defendants] as to [Martinez's] claims against them in the State Court action."  ¶¶ 20-21.[4]

While Vermont Mutual has thus far paid for the Defendants' legal defense to the Underlying Action, subject to a reservation of its right to deny coverage under the Policy, Vermont Mutual seeks to put an end to a continuing duty to defend the Defendants through this declaratory judgment action ("DJA").  In aid of that effort, Vermont Mutual proffers, or expresses a determination to obtain, evidence from a number of sources, some outside the pleading in the Underlying Action, which Vermont Mutual claims will tend to show that one or another of the Policy exclusions applies to Martinez's claims against the Defendants.

Indeed, Vermont Mutual's chief theory of the case in this DJA appears to be that because facts external to the Underlying Complaint render the damages claimed therein excluded from coverage under the Policy by one exclusion or another, Vermont Mutual has neither a duty to defend the Defendants in the Underlying Action nor a duty to indemnify the Defendants from liability found against them in the Underlying Action.  As an alternative theory, Vermont Mutual argues in its Supplemental briefing that, even if the Underlying Complaint is taken as true, and read entirely without additional outside facts or information, either the Policy's contractual language concerning Vermont Mutual's duty to defend, or the Policy's language concerning its employers and professional services liability exclusions, *could* serve to preclude Plaintiff's duty to defend Defendants in the

---

[4]  The same formula is repeated with respect to workers' compensation.

Underlying Action.

In moving for summary judgment on the Third and Fifth Counts of Vermont Mutual's DJA Complaint, Defendants first contend that allegations contained within this Complaint have the effect of making the duty of Vermont Mutual to *defend* the Defendants in the Underlying Action against the Defendants conditioned upon Vermont Mutual's duty to *indemnify* the Defendants for any liability under that action.  That proposition, Defendants argue, is contrary to Connecticut case law governing an insurance company's duty to defend its insured in circumstances such as those presented by the case at bar.    Defendants further aver that the allegations contained within the four corners of the Underlying Complaint require Plaintiff to defend Defendants under the Policy Plaintiff issued to Defendants.

This Ruling resolves the Defendants' Motion for Summary Judgment on the Third and Fifth Counts of Plaintiff's DJA.

## II.    Standard of Review

### A.    Jurisdiction

This Court exercises subject matter jurisdiction over the present action based on diversity of citizenship under 28 U.S.C. § 1332.  There is complete diversity of citizenship between Plaintiff Vermont Mutual and all Defendants and the amount in controversy exceeds $75,000.[5]  Accordingly, this Court has jurisdiction to render declaratory judgment under the Declaratory Judgment Act, 28

---

[5] Plaintiff Vermont Mutual is a mutual insurance company organized under the laws of the State of Vermont, and with its principal place of business in Montpelier, Vermont. Defendants Paul E. Ciccone, Paul E. Ciccone d/b/a PC Properties and Miguel Martinez are citizens of the State of Connecticut.  Elm Ridge Development, LLC is a Connecticut limited liability company with a principal place of business in Connecticut.  It appears that no equity owner of the LLC is a citizen of a state other than Connecticut, and particularly not of Vermont, a factor which if present would destroy diversity jurisdiction.

U.S.C. § 2201.

### B.     Declaratory Judgment

Plaintiff Vermont Mutual requests that this Court render declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, under which, in "a case of actual controversy within its jurisdiction" a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[6]  The Declaratory Judgment Act "created an opportunity, rather than a duty, to grant a new form of relief," and in so doing has afforded courts "unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-88 (1995).   An action under the Declaratory Judgment Act "must be sufficiently real and immediate" to allow for "specific and conclusive relief," as well as be "ripe for adjudication."  *Colony Ins. Co. v. Jack A. Halprin, Inc.*, 2012 WL 2859085, at *6 (D. Conn. 2012) (internal quotation marks omitted).

Connecticut law has made clear that "[t]here is no question that a declaratory judgment action is a suitable vehicle to test the rights and liabilities under an insurance policy."  *St. Paul Fire & Marine Ins. Co. v. Shernow*, 22 Conn. App. 377, 380 (1990).  In determining whether it will exercise jurisdiction over the action in question, the district court may consider whether "practicality and wise judicial administration will predominate."  *Middlesex Ins. Co. v. Mara*, 699 F.Supp. 2d 439, 444 (D. Conn. 2010) (*quoting U.S. Underwriters Ins. Co. v. Kum Gang, Inc.,* 443 F.Supp. 2d 348, 352-3 (E.D.N.Y. 2006)).

---

[6]*See also* Fed. R. Civ. P. 57, which states that "[t]hese rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201."

### C.     Summary Judgment

A court may properly address the merits of a declaratory judgment action – the purpose of which, as discussed *supra*, "is to secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties," *Conn. Ass'n of Health Care Facilities, Inc. v. Worrell,* 199 Conn. 609, 613 (1986); *see also, e.g.*, *New London County Mut. Ins. Co. v. Nantes*, 303 Conn. 737 (2012) (citing *Bysiewicz v. Dinardo,* 298 Conn. 748, 756 (2010)) – through a motion for summary judgment. *Middlesex Ins. Co. v. Mara,* 699 F.Supp 2d 439, 444 (D. Conn. 2010); *Holyoke Mut. Ins. Co. v. Schlechtweg*, 2003 WL 22291889 at *2 (Conn. Super. Sep. 19, 2003); *Comty. Action for Greater Middlesex County, Inc. v. American Alliance Ins. Co.*, 254 Conn. 387, 397-98 (2000).

The standards for summary judgment are familiar.  In a motion for summary judgment, the burden is on the moving party (here, Defendants) to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  A dispute regarding a material fact exists where "a reasonable jury could return a verdict for the nonmoving party."  *Aldrich v. Randolph Cent. School Dist.*, 963 F.2d 520, 523 (2d Cir 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248); *see also EDO Corp. v. Newark Ins. Co.*, 898 F.Supp. 952, 954 (D. Conn. 1995).  A moving party may satisfy this burden by demonstrating the lack of evidence to support the nonmoving party's case.  *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  Accordingly, summary judgment may be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law. *Id; see also Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170 (2d Cir. 2006).

A nonmoving party cannot make a legally sufficient showing on an essential element with respect to which it has the burden of proof with "merely colorable" evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the nonmoving party's position" is similarly "insufficient; there must be evidence on which the jury could reasonably find for him." *Colony Ins. Co. v. Walker*, 2010 WL 3257651 at *2 (D. Conn. August 16, 2010). In addition, "[c]onclusory allegations will not suffice to create a genuine issue." *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990).

In ruling upon a motion for summary judgment, a court must resolve "all ambiguities and draw all influences in favor of the nonmoving party in order to determine how a reasonable jury would decide," *Aldrich v. Randolph Cent. School Dist.*, 963 F.2d at 523; consequently it is only "when reasonable minds could not differ as to the import of the evidence" that a ruling of summary judgment will be deemed appropriate. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). Summary judgment is therefore proper when, after drawing all reasonable inferences in favor of the non-movant, no reasonable trier of fact could find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Bryant v. Maffucci*, 923 F.2d at 982.

Connecticut courts have specifically held that summary judgment is an appropriate vehicle by which to determine whether an insurer owes an insured a duty to defend on the basis of an insurance policy, on the rationale that the "[c]onstruction of a contract of insurance presents a question of law for the court." *Hansen v. Ohio Cas. Ins. Co.*, 239 Conn. 537, 543 (1996) (quoting *Aetna Life & Cas. Co. v. Bulaong*, 218 Conn. 51, 58 (1991)); *see also Middlesex Ins. Co. v. Mara,*

8

699 F.Supp 2d at 444 (citing same); *American Home Assur. Co. v. Abrams,* 69 F.Supp. 2d 339, 348 (D. Conn. 1999).   Indeed, the "question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations [in the underlying] complaint with the terms of the insurance policy," *Cmty. Action for Greater Middlesex County, Inc. v. American Alliance Ins. Co.,* 254 Conn. 387, 395 (2000), and Connecticut courts have long held that it "is axiomatic that no insurer is bound to provide indemnification or defense beyond the scope of the coverage described in the insurance contract, the policy." *St. Paul Fire and Marine Ins. Co. v. Shernow*, 22 Conn. App. 377, 380-81 (1990) (citation omitted); *Allstate Ins. Co. v. Limone*, 2009 WL 5302922 at *6 (Conn. Super. Dec. 3, 2009) (quoting same).   In an insurance coverage case, it is consequently "the function of the court to construe the provisions of the insurance contract and, if no material facts are at issue, the question of whether coverage exists is a question of law that is appropriate decided on a motion for summary judgment." *Peerless Ins. Co. v. Disla*, 999 F. Supp. 261, 263 (D. Conn. 1998).

In the present case, it is Defendants' position that no issue of material fact exists as to the Third and Fifth Counts of Plaintiff's Declaratory Judgment Complaint, which, as discussed *supra*, respectively contain claims that Vermont Mutual has no duty to defend defendants under the relevant insurance policy due to an exclusion for employer's liability; and Vermont Mutual has no duty to defend defendants under the relevant insurance policy due to an exclusion for professional services. Defendants thus conclude that as a matter of law that the Court ought to dismiss the Third and Fifth courts of the Declaratory Judgment Complaint in this summary judgment ruling.

D.    **Choice of Law**

1.    **The Court Applies Connecticut Law in Interpreting the Insurance Policy**

When a federal court sits in diversity, it will determine which state's substantive law governs

the dispute under the forum state's conflict of law rules.  *See, e.g., Kalxon Co. v. Stentor Electric*

*Mfg. Co.*, 313 U.S. 487, 496 (1941) ("matters of substance ... should be settled by reference to the

law of the appropriate state according to the type of case being tried in the forum.").  Connecticut

law has adopted Restatement (Second) of Conflicts of Law ("Restatement") § 188 for issues of

contract interpretation.  Section 188 states that, as determined by several factors including: "(a) the

place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the

location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of

incorporation and place of business of the parties,"[7] the law of the state with the "most significant

relationship" to the transaction and parties ought to be applied absent a choice of law provision in

the insurance contract.  *Reichhold Chems., Inc. v. Hartford Accident and Indem. Co.*, 252 Conn 774,

781n.4 (2000); Restatement (Second) of Conflicts of Law § 188.

In making a determination concerning which state has the most significant relationship to the

transaction in question, Connecticut law specifically recognizes "a rebuttable presumption in favor

of the state where the insured risk is located." *Reichhold Chems., Inc. v. Hartford Accident and*

*Indem. Co.*, 252 Conn at 782; Restatement (Second) of Conflicts of Law § 193.  "The validity of a

contract of fire, surety, or casualty insurance and the rights created thereby are determined by the

local law of the state which the parties understood was to be the principal location of the insured risk

---

[7] Under the Restatement, "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue."  Restatement (Second) of Conflicts of Law § 188.

during the term of the policy," unless it is demonstrated that "with respect to the particular issue, some other state has a more significant relationship ... to the transaction and the parties." Restatement (Second) of Conflicts of Law § 193. This Court has previously interpreted Restatement § 193 and the test it sets forth to mean that, "in the absence of *extraordinary* circumstances, the law of the state where the principal insured risk is located will apply." *Lumbermens Mut. Cas. Co. v. Dillon Co. Inc.,* 2000 WL 1336498, at *2-3 (D. Conn. August 31, 2000) (citation and internal quotation marks omitted) (emphasis in original).

In the instant case, all Defendant-insureds are citizens or domiciles of Connecticut. Connecticut is the place in which the insurance contract was entered into (through the Sumner & Sumner, Inc. agency of Willimantic, CT). It is also the location of the subject matter (i.e., an eight-unit apartment dwelling at 171 Garfield Avenue, New London, Connecticut where Mr. Martinez's alleged injury took place), *see* [Doc. 37-3] at 3; [Doc. 37-4] at ¶ 1. The Court further notes that, although thus far the parties have made no mention of "choice of law," both Plaintiff and Defendants cite Connecticut law throughout their respective briefing in this matter, making evident their understanding and belief that substantive Connecticut law governs this case.

Taking into consideration this array of facts, the Court finds that Connecticut has the most significant relationship to the controversy at issue and, accordingly, the Court will apply Connecticut law to this matter.

### 2.    Insurance Policy Interpretation under Connecticut Law

Connecticut applies the general rules of contract interpretation to insurance policies, and enforces them "in accordance with the parties' intent, as derived from the plain and ordinary meaning of the policy's terms." *Allstate Ins. Co. v. Quito*, 2007 WL 2221163, at *3 (D. Conn. August 2,

2007); *Ohio Cas. Ins. Co. v. Dentek, Inc.*, 283 F.Supp. 2d 655, 659 (D. Conn. 2003); *Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d at 446-47.  Under Connecticut law, a court interpreting an insurance contract must view it "in its entirety" and "consider all relevant portions together, and, if possible, give operational effect to every provision in order to reach a reasonable overall result.*" Associated Comty. Bancorp, Inc. v. The Travelers Companies, Inc.*, 2010 WL 1416842 at *11 (D. Conn. April 8, 2010) (internal quotation marks omitted). "If the terms of the policy are clear and unambiguous, then the language from which the intention of the parties is to be deduced[] must be accorded its natural and ordinary meaning .... Under those circumstances, the policy is to be given effect according to its terms." *Taylor v. Mucci*, 288 Conn. 379, 383 (2008); *see also Hartford Casualty Ins. Co. v. Litchfield Mutual Fire Ins. Co*, 274 Conn. 457, 463 (2005) ("[A]  contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy ... [giving the policy's words] their natural and ordinary meaning.")

        In cases in which there is "any ambiguity in the terms" of an insurance policy, such ambiguous terms ought to be construed in the insured's favor.  *Hartford Casualty Ins. Co. v. Litchfield Mutual Fire Ins. Co*, 274 Conn. at 463; *MH Lipiner & Son, Inc. v. Hanover Ins. Co.*, 869 F.3d 685, 687 (2d Cir. 1989); *see also Clinton v. Aetna Life & Sur. Co.*, 41 Conn. Super. 560, 563 (Conn. Super. 1991) (any "ambiguous words or phrases in an insurance policy [ought to be] construed strictly against the insurance company and in favor of coverage.").  The court's goal, then, in construing any policy ambiguities is to examine and apply them as they would be understood by "a layman, rather than [by] an experienced underwriter." *Jurrius v. Maccabees Mut. Life Ins. Co.*, 587 F. Supp. 1301, 1305 (D. Conn. 1984).  Nonetheless, while the "test of coverage is not what the insurer intended to cover but what a reasonable person in the position of the insured would

understand to be covered," *Clinton v. Aetna Life & Sur. Co.*, 41 Conn. Super. at 563 (citation omitted), a court should not "torture words to import ambiguity" where none exists. *Jurrius v. Maccabees Mut. Life Ins. Co.*, 587 F. Supp. at 1305 (citation omitted).

As the Connecticut Supreme Court has recently stated, this general principle of insurance policy interpretation  – i.e., the notion that "when the words of an insurance contract are, without violence, susceptible of two [equally reasonable] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted" – also "extends to exclusion clauses." *Vermont Mutual Ins. Co. v. Walukiewicz*, 290 Conn. 582, 592 (2009) (citation omitted).  Thus, "[w]hen an exclusion clause is relied upon to deny coverage, the insurer has the burden of demonstrating that the allegations of the [underlying] complaint cast that pleading solely and entirely within the policy exclusions and, further, that the allegations, *in toto*, are subject to no other interpretation." *Nationwide Mutual Ins. Co. v. McHugh*, 2001 WL 1706752 at *3 (Conn. Super. Dec. 19, 2001) (citation omitted); *see also, e.g., R.E.O., Inc. v. Travelers Companies*, 1998 WL 285836 at *5 (Conn. Super. May 20, 1998); *Mikolinski v. Cumberland Mut. Fire Ins. Co.,* 1997 WL 723429 at *4 (Conn. Super. Nov. 10, 1997).  An insurer therefore bears a "heavy burden," *Nationwide Mutual Ins. Co. v. McHugh*, 2001 WL 1706752 at *3, since if the allegations contained within an underlying complaint fall "even possibly within the coverage" and therefore, even possibly outside of the relevant insurance policy exclusions, an insurer must defend.  *Moore v. Continental Cas. Co.*, 252 Conn. 405, 409 (2000); *QSP, Inc. v. Aetna Cas. & Sur. Co.,* 256 Conn. 343, 376 (2001) (quoting same).

## III.   Plaintiff's Duty to Defend under Connecticut Law

In most liability insurance policies including the Policy in the case at bar, insurers are both

allowed control over pertinent litigation involving their insureds and are deemed responsible for defending their insureds against any and all actions based upon allegations that fall within a policy's coverage. This responsibility is contractual and based upon the specific language of an insurance policy. Unless such language specifies otherwise, an insurer's duty to defend its insured exists regardless of a lawsuit's validity or invalidity, its merit or lack thereof.

Plaintiff Vermont Mutual has repeatedly averred in its briefing that Connecticut law distinguishes between on the one hand what Plaintiff has termed an insurer's "initial duty to defend" and on the other hand what Plaintiff has termed an insurer's "ongoing duty to defend." This perceived distinction functions as the linchpin of Plaintiff's arguments in Plaintiff's DJA Complaint, and also underlies the majority of arguments that Plaintiff makes to support its conception of its duty to defend Defendants in the Underlying Action. The question arises: Is that distinction sound in law?

Plaintiff Vermont has stated in its briefing that it "does not seek a declaration of this Court that Vermont Mutual was not initially obligated to accept tender of the Ciccone defendants' defense in the underlying Martinez action," nor does it "dispute that under Connecticut law, Vermont Mutual's defense obligation to the Ciccone defendants *initially* is determined by reference to the Martinez complaint's allegations, and whether those allegations state claims that possibly fall within the subject Vermont Mutual's policy coverage." *See* Vermont Mutual's Opposition to Motion for Summary Judgment, [Doc. No. 39] at 2 (emphasis in original). Rather, Vermont Mutual seeks declarations that (1) the Underlying Action's claims do not trigger the insurance policy's *indemnity coverage*; and (2) "a concomitant declaration that due to the lack of indemnity coverage for the Martinez action claims, Vermont Mutual does not have an ongoing duty to defend the Ciccone

14

defendants as to those claims." *Id.* at 2-3.

Essentially, Vermont Mutual contends that as a matter of Connecticut law it would have no duty to *continue defending* Defendants against claims in the Underlying Action should "this Court determine[]" through an evidence-based inquiry "that there is *no indemnity coverage* for those claims." *Id.* at 3. (emphasis added)*.* This is because, Plaintiff postulates, "Connecticut law clearly establishes that" *any ongoing duty* to defend on Vermont Mutual's part "is contingent upon this Court finding that indemnity coverage exists for those underlying claims," *Id.* at 1 – an inquiry that would involve the consideration of facts external to the Underlying Complaint.

The Court disagrees with Plaintiff Vermont Mutual's analysis of Connecticut law, and concludes that relevant and governing law recognizes only *a single duty to defend regardless of whether a defense has already been undertaken*, which, with narrow exceptions not applicable to the case at bar, is exclusively based upon the allegations contained in an underlying complaint.

## A.    Connecticut Law Recognizes Only One Duty to Defend, Which Is Based upon the Allegations Made in an Underlying Complaint

Plaintiff Vermont Mutual avers that Connecticut law is clear that while an insurer may have a so-labeled "initial" duty to defend based upon allegations made in an underlying complaint, a so-labeled "ongoing" duty to defend is both evidence-based  and significantly tailored to a fact-based inquiry as to whether an insurer has an obligation to indemnify its insured without regard to the underlying complaint's allegations.  For example, in Plaintiff's Opposition to Motion for Summary Judgment, Plaintiff states that "Connecticut law clearly establishes that the ongoing nature of [Plaintiff's] defense obligation" of Defendants in the Underlying Action "*is contingent upon this Court finding that indemnity coverage exists for those underlying claims*." [Doc. 39] at 1 (emphasis

15

added).  Further, Plaintiff contends that "the Court should deny [Defendants' Motion for Summary

Judgment] because Connecticut law clearly authorizes Vermont Mutual to litigate, *in this action*, the

facts and legal issues pertinent to determining whether defense or indemnity coverage exists for

those underlying claims, and to pursue such coverage litigation while the underlying action is

pending, and while funding [Defendants'] defense in the underlying action under a reservation of

rights."  *Id.* at 1-2.  Plaintiff explicates:

> Vermont Mutual does not seek a declaration of this Court that Vermont Mutual was not initially obligated to accept tender of the Ciccone defendants' defense in the underlying Martinez action.  Vermont Mutual does not dispute that under Connecticut law, Vermont Mutual's defense obligation to the Ciccone defendants *initially* is determined by reference to the Martinez complaint's allegations, and whether those allegations state claims that possibly fall within the subject Vermont Mutual's policy coverage ...

> ... Vermont Mutual seeks a declaration of the Court that it has no duty to *continue* defending the Ciccone defendants as to the claims asserted against them in the underlying Martinez action *when and if* this Court determines that there is no indemnity coverage for those claims.

*Id.* at 2-3.  Vermont Mutual therefore avers that its ongoing defense obligation does not extend

beyond claims that actually fall within the Policy's coverage – i.e., which would incur a duty to

indemnify – as determined through this coverage action, and as demonstrated by facts external to

those asserted in the Underlying Complaint.

Despite Plaintiff's assertions that "Connecticut law clearly establishes that" any ongoing duty

to defend "is contingent upon this Court finding that indemnity coverage exists for those underlying

claims," *Id.* at 1, the Court could locate no instance or precedent in which such an assertion finds

support.  While it is without doubt the case that a specific clause contained in an insurance policy

has the ability to limit an insurer's contractual duty to defend its insured – the possibility of which

in the case at bar is discussed *infra* – Vermont Mutual's contention that any court must confine any

finding of an insurer's so-labeled ongoing duty to defend its insureds to those instances in which a duty to indemnity is also deemed present is, in fact, manifestly *inconsistent* with Connecticut law on the subject.

The Court notes that Plaintiff fails to cite even one relevant case that distinguishes or even alludes to a distinction between what Plaintiff terms an "initial duty to defend" and an "ongoing duty to defend."  The reason for this is simple: such cases simply do not exist within this jurisdiction. Moreover, while theoretically it could be possible that Plaintiff has merely created a set of terms for a previously unlabeled phenomenon that has taken place within Connecticut courts for years, even a brief examination of applicable law demonstrates that this is not the case.

In support of Plaintiff's proposition, Plaintiff makes reference to several cases in its Supplemental Brief in Opposition to Defendants' Motion for Summary Judgment [Doc. 50], which Plaintiff subsequently chides Defendants for not addressing in their own Supplemental Brief. Specifically, Vermont Mutual states:

> [T]he Ciccone Defendants fail to address any one of the cases Vermont Mutual cites in its Supplemental Brief demonstrating that under Second Circuit and Connecticut law, an insurer's initial duty to defend is determined solely by the allegations of the underlying complaint, but thereafter, the insurer's *ongoing* duty to defend is based on facts, not allegations, establishing the actual circumstances and bases for the claims asserted against the insured in an underlying action.

Plaintiff's Reply to Defendants' Supplemental Brief in Support of Their Motion for Summary Judgment [Doc 56] at 3.  However, not one of the cases Vermont Mutual cites in its Supplemental Brief demonstrates or even suggests that an "insurer's *ongoing* duty to defend is based on facts, not allegations, establishing the actual circumstances and bases for the claims asserted against the insured in an underlying action."  *Id.*  Specifically, Plaintiff Vermont Mutual cites five cases in its

Supplemental Brief,[8] [Doc. 50] at 6-8, only two of which could even plausibly be construed to indicate a very narrow and non-applicable exception to the general Connecticut rule regarding an insurer's duty to defend: *Aetna Casualty & Surety Co. v. Abbott Laboratories, Inc.,* 636 F. Supp. 546 (D. Conn. 1986) and *Lee v. Aetna Casualty & Surety Co.,* 178 F.2d 750 (2d Cir. 1950).

*Aetna Casualty & Surety Co. v. Abbott Laboratories, Inc.,* a decision issued by this Court over two-and-a half decades ago, concerned "an interpretation of the trigger-of-coverage provisions of the standardized insurance policies issued by the insurers to ... pharmaceutical manufacturers." *Aetna Casualty & Surety Co. v. Abbott Laboratories, Inc.,* 636 F. Supp. at 547. The Court grappled with how to handle coverage issues when it was unclear whether the underlying injuries or occurrences (i.e., harm to pregnant women and fetuses *in utero* due to medication ingested by pregnant women) had occurred during particular policy periods. The Court held that in such a circumstance, insurers must "bear the costs of defense of each lawsuit against [their insureds] in which [underlying] complaint[s] *could be read* to permit proof, or [do] not *exclude* the possibility of proof, that an injury or occurrence in fact took place during the policy period as a result of exposure to" the harmful drugs. *Id.* at 551 (emphasis added). The Court indicated that insurers could be relieved of such a duty to defend their insureds under such circumstances should insurers be able to "confine a particular claim so as to exclude the possibility of a recovery for which they have provided insurance." *Id.*

The Court does not believe that the *Aetna Casualty & Surety Co. v. Abbott Laboratories, Inc.*

_____

[8] Two of these five cases, *Firestine v. Poverman et al.*, 388 F. Supp. 948 (D. Conn. 1975) and *Assurance Co. of America v. Cabelerio*, 1999 WL 557957 (Conn. Super. June 16, 1999), merely make clear the courts' preference that insurers defend their insureds under a reservation of rights pending a court's determination of insurers' pertinent duties to defend and indemnify.

holding is apposite to the case at bar.  The language and holding in *Aetna Casualty & Surety Co. v. Abbott Laboratories, Inc.* merely stands for the proposition that when there is ambiguity concerning whether the allegations of an underlying complaint, *taken as they are* and in their entirety, fall within the actual coverage period, an insurer may attempt to confine the claims for which it has a duty to defend to those which actually fall within the coverage as contracted under the contracted insurance policy.  There is no suggestion that any external evidence such confining might involve would in any way contest or dispute the actual *allegations* contained in relevant underlying complaints; rather, such confining would merely seek to provide an overarching coverage *context* for these undisputed allegations.

In the case at bar, there is no dispute regarding whether the date of the injury falls within the coverage provided by the Policy held between Plaintiff and Defendants.  Further, nothing in either this 1986 decision nor in *Lee v. Aetna Casualty & Surety Co.*, 178 F.2d 750, 752 (2d Cir. 1950) – to which it cites and which is concerned with the *application of New York law* to the narrow and inapposite issue of an insurer's duty to defend its insured against an underlying action which involves a complaint that "allege[s] that an injury happened in one of several [ways]" and therefore "is either or is not within that class" of "events covered by the policy," *Lee v. Aetna Casualty & Surety Co.*, 178 F.2d 750, 752 (2d Cir. 1950) – may be read to state that as a general matter under Connecticut law an insurer may by right contest a so-termed "ongoing duty to defend" by raising facts and providing evidence to directly challenge the *veracity* of those allegations contained within an underlying complaint.

The Court further notes that *Philbin Bros. LLC v. Hartford Fire Ins. Co.*, another of the five cases Plaintiff cites in its Supplemental Brief, [Doc. 50] at 6, clearly states that the "duty to defend

19

is considerably broader than the duty to indemnify;" that the "question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of [a] complaint ... with the terms of the insurance policy;" and that in "construing the duty to defend as expressed in an insurance policy, the obligation of the insurer to defend [depends] on whether [the] complaint [states] facts which bring the injury within the coverage."  2008 WL 5540428 at *2 (Conn. Super. Dec. 11, 2008) (internal quotations and citations omitted).[9]  While presumably Plaintiff would contend that such duty to defend language is solely in reference to an insurer's so-termed "initial duty to defend," the Court disagrees with such an interpretation, as addressed *infra*.

### 1.    Plaintiff's So-Termed "Initial Duty to Defend"

In general, when faced with the dilemma of whether to defend or refuse to defend a proffered claim from its insured, an insurer has several options, chiefly: (1) to completely decline to assume an insured's defense; (2) to seek a declaratory judgment as to the insurer's rights and obligations; (3) to defend under a reservation of rights or nonwaiver agreement and then adjudicate coverage-related issues in a separate suit; or (4) to assume an insured's unqualified defense.  *See. e.g.,* Lee R. Russ and Thomas F. Segalla, Couch on Insurance § 202:1 (3d ed. 2005).

Connecticut law is clear that an "insurer may not refuse the tendered defense of an action

---

[9]  *Nota bene*, *Philbin Bros. LLC  v. Hartford Fire Ins. Co.* even goes so far as to state that if "an allegation of the complaint falls *even possibly* within the coverage, then the insurance company must defend the insured;" that the "insurer has the burden of demonstrating that the *allegations* of the complaint case that pleading solely and entirely within the policy exclusions and, further, that the *allegations* ... are subject to no other interpretation;" and that "it is well established ... that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered."  2008 WL 5540428 at *2 (emphasis added) (internal quotations and citations omitted).

unless a comparison of the policy with the underlying complaint shows on its face that there is no potential for coverage." *EDO Corp. v. Newark Ins. Co.*, 898 F. Supp. 952, 961 (D. Conn. 1995) (emphasis added) (citation omitted).  Accordingly, in situations in which a complaint *even may allege facts* that fall under the insurance policy, insurance companies will often defend their insureds under a reservation of rights while simultaneously or subsequently seeking a court's declaration that no duty to defend actually exists.  Plaintiff has done exactly this in the case at bar.

It appears that the "initial duty to defend" to which Plaintiff refers is in reality the issue of whether an insurer immediately tenders a defense of its insured.  Plaintiff appears to accept that the standard for the adoption of such a defense is quite low, agreeing that such a standard has been met in the case at bar: "Vermont Mutual does not dispute that under Connecticut law, Vermont Mutual's defense obligation to the Ciccone defendants *initially* is determined by reference to the Martinez complaint's allegations, and whether those allegations state claims that possibly fall within the subject Vermont Mutual's policy coverage." [Doc. 39] at 2.

Plaintiff also mentions the relative pressure placed upon insurance companies to tender defense of insureds under a reservation of rights.  For example, in its Supplemental Brief in Opposition to Defendants' Motion for Summary Judgment, Plaintiff cites *Firestine v. Poverman et al.*, 388 F. Supp. 948 (D. Conn. 1975) and *Assurance Co. of America v. Cabelerio*, 1999 WL 557957 (Conn. Super. June 16, 1999), both of which concern the generally held notion under Connecticut law that in instances in which there is a question regarding an insurer's duties to defend or indemnify, it is preferable that the insurer defend its insureds under a reservation of rights rather than decline

to defend them at all.  *See* [Doc. 50] at 8.[10]  However, such cases do not in any way suggest that the standards by which  a so-termed "initial duty to defend" is evaluated or determined vary from those utilized by a court when evaluating an insurer's so-termed "ongoing duty to defend" in a declaratory judgment action such as the one before the Court in the case at bar – nor, for that matter, do they suggest that there is any distinction between such so-termed duties.

### 2.      Plaintiff's So-Termed "Ongoing Duty to Defend"

It similarly appears that the "ongoing duty to defend" to which Plaintiff refers is the issue of whether and to what extent an insurer *must continue* its defense of an insured after the insurer has initially taken up such a defense under a reservation of rights.  It is the legal standard for this latter category of an insurer's duty to defend, to the extent that it is a distinct category at all –  a notion to which this Court does not subscribe – that a court would presumably utilize in a declaratory judgment action such as the case at bar.  However, although Plaintiff fashions and seeks to apply distinct terms for two allegedly different categories of an insurer's duty to defend, there is little question that under the law of Connecticut, the standards and criteria by which a court evaluates either an insurer's so-termed "initial" or "ongoing" duty to defend are in fact exactly the same.

As stated *supra*, Plaintiff does not dispute the general rule that an "insurer may not refuse the *tendered* defense of an action unless a comparison of the policy with the underlying complaint shows on its face that there is no potential for coverage." *EDO Corp. v. Newark Ins. Co.,* 898 F. Supp. 952, 961 (D. Conn. 1995) (emphasis added) (citation omitted).  However, Plaintiff contends that the

---

[10]   *See also, e.g.,* Plaintiff's discussion of *United Services Auto. Ass'n v. Marburg*, 1995 WL 643163 (Conn. Super. Oct. 25, 1995) and *St. Paul Fire and Marine Ins. Co. v. Shernow,* 22 Conn. App. 377 (1990), in Plaintiff's Opposition to Motion for Summary Judgment, [Doc. 39] at 4-5.

standards of an insurer's duty to continue defending its insured are somehow different and distinct at a declaratory judgment stage, post-assumption of the defense under a reservation of rights, from those that are applicable to an insurer's duty to defend its insured at the outset of an underlying action.

There is simply no basis for Plaintiff's claim, or the distinction that Plaintiff seeks to make, under Connecticut law. Three recent court rulings, two issued by this Court and one issued by the Connecticut Superior Court, illustrate this point. For example, in *Middlesex Ins. Co. v. Mara,* 699 F.Supp.2d 439, decided by this Court in 2010, the Court was presented with a declaratory judgment action which, as is the case in the case at bar, sought to  determine whether an insurer which had *already undertaken a defense* of its insured under a reservation of rights had a *continuing* duty to defend its insured in light of Connecticut standards of an insurer's duty to defend. In its ruling, the Court stated without reservation:  "[I]t is the *allegations of the [underlying] complaint that [were] determinative*" of an insurer's continuing duties to defend its insured, "and not the merits of those allegations." 699 F. Supp. 2d 439, 449n.12 (D. Conn. 2010) (emphasis added). Contrary to Plaintiff's contention, this opinion, written only two years ago, contained no special standard for a so-termed "ongoing duty to defend" that required the examination of facts outside the underlying complaint; on the contrary, the standard that the Court applied was identical to standards applied in all other Connecticut law-based judicial determinations of an insurer's duty to defend, regardless of whether a defense of the insured had already been undertaken by the insurer under a reservation of rights.

Another decision issued by this Court in 2007, *The Burlington Insurance Company v. DeVesta d/b/a Carpentry Concepts, et al.*, 511 F.Supp. 2d 231, also illustrates this point. There, a

23

liability insurer brought a declaratory judgment action seeking a determination that it had no duty to defend or indemnify its insured against the third-party claims for which the insurer was already providing a defense under a reservation of rights.  511 F.Supp. 2d 231, 232 (D. Conn. 2007).  As was the case in *Middlesex Ins. Co. v. Mara*, although the Court was seeking to determine the insurer's ongoing duty to defend its insured in the underlying action, and not its initial duty to take up this defense, the Court nonetheless looked solely to what was "found within the four corners of the [underlying] complaint."  *Id.* at 234.  Quoting the 1998 Second Circuit decision in *Stamford Wallpaper Co., Inc. v. TIG Ins.,* 138 F.3d 75, this Court stated that "[u]nder Connecticut law, an insurer's duty to defend is broader than its duty to indemnify.  The general rule is that if an allegation of the [underlying] complaint falls even *possibly* within the coverage, then the insurance company must defend the insured ... [and] it is the contractual duty of the insurer to defend the insured in that action regardless of the duty of the insurer to indemnify."  *Id.* at 233 (quoting *Stanford Wallpaper Co., Inc. v. TIG Ins.,* 138 F.3d 75, 79 (2d Cir. 1998) (emphasis added)).  Thus the Court neither considered nor applied any special standard for a so-termed "ongoing duty to defend."

Similarly, in *New London County Mut. Ins. Co. v. Buckley*, 2010 WL 745415, decided in 2010, the Connecticut Superior Court reviewed and ruled upon a declaratory judgment action brought by an insurance company which, exactly like Plaintiff Vermont Mutual in the case at bar, had adopted a defense of its insured under a reservation of rights.  The Connecticut Superior Court stated that the plaintiff "insurer's duty to defend [was to be] measured by the allegations of the complaint," and accordingly that "*if the complaint sets forth a cause of action withing the coverage of the policy, the insurer must*" continue to defend.  2010 WL 745415 at *1 (Conn. Super. January 26, 2010) (emphasis added) (quoting *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire. Ins. Co.*, 274

Conn. 457, 464 (2005)).  Just as with the District Court's decisions issued in *Middlesex Ins. Co. v. Mara* and *The Burlington Insurance Company v. DeVesta d/b/a Carpentry Concepts, et al.,* despite the fact that an insurer had already adopted a defense of its insured prior to the bringing of the declaratory judgment action and was subsequently seeking a determination of whether it was required to continue defending its insured, the Connecticut Superior Court in *New London County Mut. Ins. Co. v. Buckley* made no mention of an alternative standard for the insurer's duty to defend and, on the contrary, restated the standard Connecticut duty to defend language, which rests solely upon the allegations found in the underlying complaint.

Notably, while there certainly have been situations in which insurers did agree to tender defenses of their insureds under a reservation of rights, as Plaintiff has done in the case at bar, and were subsequently declared by a court not to have any such duty to defend, such judicial conclusions were based on the *allegations contained in the underlying complaints* as read in conjunction with the language contained in the relevant insurance policies, not on outside evidence or information. In such cases, the courts were essentially reasoning that since the insurers *had never had* a duty to defend their insureds in the relevant matters, these insurers ought to be relieved of any ongoing burden of defending, which had been adopted unnecessarily at the outset.

For example, this Court held that the plaintiff insurer in *The Burlington Insurance Company v. DeVesta d/b/a Carpentry Concepts, et al.* had no duty to defend its insured against an underlying third-party complaint which did "not *allege* an injury that [fell] within the coverage" of the relevant insurance policy.  *The Burlington Insurance Company v. DeVesta d/b/a Carpentry Concepts, et al.*, 511 F.Supp. 2d at 234 (emphasis added).  Similarly, in *Middlesex Ins. Co. v. Mara*, this Court found that a plaintiff insurance company had no duty to defend its insured due to the fact that all of the

25

*allegations* made in the underlying complaint fell under exclusions that were contained within the relevant insurance policy. *Middlesex v. Mara*, 699 F. Supp. 2d at 461-62. In each of these cases, the Court was essentially ruling at a declaratory judgment stage that the plaintiff-insurers had never had a duty to defend their insureds because the allegations made in the third-party complaints did not fall under the applicable insurance policies.

Indeed, as discussed in greater detail *infra*, under Connecticut law, for *any* determination of a duty to defend, "[t]he relevant question is whether the party claiming coverage is an insured party in the capacity in which he was sued" – i.e., with narrow exceptions addressed *infra*, whether the allegations of the underlying complaint fall within the four corners of the insurance policy. *Hartford Casualty Ins. Co. v. Litchfield Mutual Fire Ins. Co*, 274 Conn. 457, 464 (2005). This is the proper question regardless of whether a defense has been adopted by an insurer under a reservation of rights. Thus, contrary to Plaintiff's assertions that a fact-based inquiry is appropriate when determining an insurer's so-termed "ongoing" duty to defend (i.e., a duty to defend its insured subsequent to the insurer's assumption of that defense under a reservation of rights), part of the very distinction that Connecticut courts have always made between the duty to defend and the duty to indemnify with narrow exceptions not applicable here is that "while the duty to defend depends only on the allegations made against the insured, the duty to indemnify depends upon the facts established at trial and the theory under which judgment is actually entered in the case." *DaCruz v. State Farm Fire and Casualty Company*, 268 Conn. 675, 688 (2004) (quoting *Board of Education of City of Bridgeport v. St. Paul Fire & Marine Ins. Co.*, 261 Conn. 37, 48-49 (2002)).

**B.**   **Under Connecticut Law an Insurer's Duty to Defend Cannot be Defeated by Facts or Allegations External to those Contained within the Underlying Complaint**

Connecticut courts have consistently held that, with narrow and non-applicable exceptions addressed *infra,* the "duty to defend an insured arises if the complaint states a cause of action which appears on its face to be within the terms of the policy coverage.  Because the duty to defend has a broader aspect than the duty to indemnify ..., [if] an action ... falls *even possibly* within the coverage, then the insurance company must defend the insured." *Imperial Casualty and Indemnity Company v. State*, 246 Conn. 313, 323-24 (1998) (emphasis added) (citations and internal quotation marks omitted); *see also Comty. Action for Greater Middlesex County, Inc. v. American Alliance Insurance Company*, 254 Conn. 387, 399 (2000) (Should "an allegation of the complaint fall[] even possibly within the coverage, then the insurance company must defend the insured.").

The existence of a duty to defend is therefore based solely upon the information and allegations contained "within the four corners of the [underlying] complaint." *Stamford Wallpaper Company v. TIG Ins*., 138 F.3d 75, 79 (2d Cir. 1998) (applying Connecticut law).  This obligation "does not depend on whether the injured party will successfully maintain a cause of action against the insured but [instead] on whether he has, in his complaint, stated facts which bring the injury within coverage." *Flint v. Universal Machine Company*, 238 Conn. 637, 646 (1996).  "In construing the duty to defend as expressed in an insurance policy, [t]he obligation of the insurer to defend" rests on whether the underlying complaint "stated facts which bring the injury within the coverage." *Hartford Cas. Ins. Co. v. Litchfield Mutual Fire Ins*., 274 Conn. 457, 463 (2005) (citations and internal quotation marks omitted).  "It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint .... Hence, if the complaint sets forth a cause of action

27

within the coverage of the policy, the insurer must defend." *Id.* (citations and internal quotation marks omitted).

Under Connecticut law an insurer is obligated to defend its insured against such a complaint even when it is privy to information that suggest that those allegations in the complaint that bring the injury within coverage are false. "It is well established ... that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered." *QSP, Inc. v. Aetna Casualty & Surety Co.*, 256 Conn. 343, 352 (2001); *American States Insurance Company v. Allstate Insurance Company*, 2003 WL 22960369 at *4 (Conn. Super. Nov. 13, 2003) (same).

It is therefore "irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is in fact not covered." *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire. Ins. Co*, 274 Conn. at 463. Even when outside facts suggest that an injury or occurrence does not fall within the coverage provided by the relevant insurance policy, it is solely an injured party's "*claim* which determines the insurer's duty to defend; and it is *irrelevant* that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact covered." *Missionaries of the Company of Mary, Inc. v. The Aetna Casualty and Surety Company*, 155 Conn. 104, 112 (1967) (quoting *Lee v. Aetna Casualty & Surety Co.*, 178 F.2d 750 (2d Cir. 1950) (emphasis added) (internal quotation marks removed)).

"The seriousness with which the courts take this duty is exemplified by the fact that the duty to defend must be exercised regardless of whether the original suit is totally groundless or regardless of whether, after full investigation, the insurer got information which categorically demonstrates that

28

the alleged injury is not in fact covered." *Krevolin v. Dimmick*, 39 Conn. Supp. 44, 48 (Conn. Super. 1983). The only "relevant question is whether the party claiming coverage is an insured party in the capacity in which he was sued." *Hartford Cas. Ins. Company v. Litchfield Mut. Fire. Ins. Co.*, 274 Conn. at 464.  An insurance company's "contractual duty to defend its insured must be exercised by the insurer irrespective of the insurer's ultimate liability to pay a judgment under its policy, so long as the allegations of the complaint fall within its coverage." *Krevolin v. Dimmick*, 39 Conn. Supp. at 48.

To be sure, Connecticut law does occasionally allow an insurer to look outside the allegations made in an underlying complaint in order to establish a duty to defend.  But such "[e]xtrinsic evidence may be considered" *solely* "in determining whether the duty to defend *exists* under the circumstances of a particular case" – not in determining that this duty does not exist – and therefore is not relevant in the case at bar, in which Plaintiff Vermont Mutual seeks to narrow, rather than broaden, the scope of its potential duty to defend.  *Fortin v. Hartford Underwriters Insurance Company,* 2005 WL 1083800 at *3 (Conn. Super. April 6, 2005).  Thus while there may be cases in which an insurer has access to additional facts that supplement the complaint so as to trigger a duty to defend, "an insurer *may not use extrinsic evidence* to *defeat* its duty to defend if the claim is potentially covered when reference is made to the underlying complaint and insurance policy alone." *Id.* (emphasis added).  This distinction was forcefully made by District Judge Droney (as he then was) in *Nationwide Mutual Insurance Co. v. Mortensen*, 222 F.Supp. 2d 173, 181 (D. Conn. 2002). Judge Droney there observed:

> [I]n certain circumstances, a court may consider known or discoverable facts and other extrinsic evidence in determining whether the insurer has a duty to defend.  This exception to the "four

> corners" rule is applied when the allegations of a complaint indicate a lack of coverage, but the insurer possesses extrinsic information, obtained through its own investigation, that the claims are in fact covered.

(citations and some internal quotation marks omitted).  The case at bar presents the converse: the allegations of Martinez's complaint indicate coverage, not its lack, and the extrinsic information Plaintiff professes to have is offered to show that Martinez's claims are not covered, rather than that they are.

Accordingly, the Court finds that Plaintiff Vermont Mutual's argument that it ought to be permitted to bring facts outside the four corners of the Underlying Complaint before this Court in order to defeat its contractual duty to defend does not and cannot succeed unless there is specific language present in the Policy between Plaintiff and Defendants that serves to preclude coverage of the allegations contained in the Underlying Complaint.

### C.    The Insurance Policy as Construed under Connecticut Law

Given Connecticut law regarding an insurer's duty to defend its insured – i.e., that such a duty is with narrow and inapplicable exceptions based upon allegations as made in an underlying complaint as read in conjunction with the relevant insurance policy – what remains to be determined in this DJA is whether there is either: (1) any specific contractual language in the Policy that either limits the scope of Plaintiff's duty to defend Defendants to solely those occurrences for which Plaintiff would also be required to indemnify them; or (2) any specific Policy exclusion that applies to the facts as alleged in the Underlying Complaint and has the effect of precluding Plaintiff's  duty to defend Defendants.

### 1.    The Specific Duty to Defend Language Contained within the Policy

To the extent that Plaintiff is arguing that its duty to defend is limited by the language of the insurance policy to solely those occurrences for which Plaintiff would also be required to indemnify Defendants (which would necessitate an examination of facts outside the language of the Underlying Complaint as such an inquiry is necessary in order to determine Plaintiff's duty to indemnify), the Court disagrees. The Court finds nothing within the Policy that confines Plaintiff's duty to defend in such a way.

Under its Policy with Defendants, Vermont Mutual agrees that while it "will have the right and duty to defend the insured against any 'suit' seeking ... damages,"Vermont Mutual "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' ... to which this insurance does not apply." [Doc 37-3] at 59. Vermont Mutual quotes this language in a seeming attempt to demonstrate that, under the specific contractual language and terms of the Policy, its "ongoing defense obligation does not extend beyond claims that actually fall within the Policy's coverage, as determined through this coverage action." Vermont Mutual's Opposition to Motion for Summary Judgment, [Doc. No. 39] at 3-4.

Reading the insurance policy contract in its entirety, as it must do under Connecticut law, *see, e.g., Philbin Bros., LLC v. Hartford Fire Ins. Co.,* 2008 WL 5540428 (Conn. Super. Dec. 11, 2008), the Court does not agree with Plaintiff's analysis of the Policy language, which the Court finds to be clear and unambiguous. The Policy explicitly defines the term "suit" to mean: "a civil proceeding in which damages because of 'bodily injury' ... to which this insurance applies *are alleged*." [Doc. 37-3] at 72 (emphasis added). In light of this definition, the Court finds that the Policy's bodily injury-related statement that Plaintiff has "no duty to defend the insured against any 'suit' seeking

31

damages for 'bodily injury' ... to which this insurance does not apply" is most readily and appropriately understood to mean that Plaintiff has no duty to defend its insured against suits that *do not allege, in their complaints, facts that would fall under the insurance policy* – and which therefore by definition do not *seek damages that are covered* under the Policy.   That common sense interpretation does not apply to the case at bar, since Martinez fell from the roof on a date within the policy period, and he alleges bodily injuries suffered in consequence.

Accordingly, the Court finds that there is no language in the insurance policy that in any way alters the general application of the duty to defend under Connecticut law, under which a liability insurer has a duty to defend its insured in a pending lawsuit if the underlying pleadings allege a covered occurrence, "even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered." *QSP, Inc. v. Aetna Casualty & Surety Co.*, 256 Conn. 343, 352 (2001).

On their face, the facts alleged in the Underlying Complaint do place the Underlying Action squarely within the insurance policy's coverage unless, as discussed *infra*, one of the Policy exclusions to which Plaintiff points in Counts Three and Five of Plaintiff's DJA does in fact preclude coverage when read in conjunction with the facts Martinez alleges in the Underlying Complaint. Plaintiff Vermont Mutual claims that two separate Policy exclusion provisions, one for employer's liability and one for professional services liability, both separately and apart serve to preclude coverage for Defendants in the Underlying Action.   The Court addresses each of these Policy exclusions in turn.

### 2.      Employer's Liability Exclusion

The Third Count of Plaintiff's Motion for Declaratory Judgment contends that Vermont Mutual has no duty to defend Defendants in the Underlying Action because bodily injury involving an "employee" of the insured is excluded from the insured's business liability coverage under the insurance policy.  *See* Motion for Declaratory Judgement, [Doc. No. 1] at 7-8.  Plaintiff avers that, upon information and belief *based upon facts external to the DJA Complaint*, Mr. Martinez was in fact an employee of Defendant Ciccone and, therefore, that the damages that he seeks in his underlying action are "excluded from coverage by virtue of the Policy's exclusion for Employer's Liability."  *Id.* at 7.  However, as discussed *supra*, the Court does not consider these claims and alleged facts, as under Connecticut law they are immaterial to the Court's inquiry of whether Plaintiff owes Defendants a duty to defend in the Underlying Action.  Rather, the Court solely applies the facts as alleged in the Underlying Complaint to the terms and language of the insurance Policy's employer's liability exclusion.

As a preliminary matter, nothing in the Underlying Complaint directly states that Defendants were Martinez's employers.  On the contrary, Count Two of the Underlying Complaint, entitled "Negligent Selection of Independent Contractor," states that "[if Martinez was] an employee of an independent contractor named Javier Rivera, [Defendants were] negligent in the selection of the independent contractor."  [Doc. 55] at 140.  The Underlying Complaint alleges immediately thereafter that Defendants' "decision to utilize Javier Rivera for the construction [in which Martinez was allegedly injured] was without adequate thought, investigation and exploration of the ability of the persons employed by him to carry out the varied functions of the task with due regard to safety and familiarity with ... work place safety standards."  *Id.*  It also alleges that "neither Javier Rivera

nor the workers under his employ possessed the minimum skill levels to conduct the work in a safe manner," and that the "Defendants also failed to reconsider their selection of Javier Rivera notwithstanding his regular absence, as well as multiple visible safety hazards." *Id.* at 141. The Court finds that on the surface and giving the Underlying Complaint a plain reading, it appears that the Underlying Complaint assumes that Martinez was Rivera's employee. The Court further notes that, if Martinez were not alleging in the Underlying Complaint that he was Rivera's employee, rather than Defendants' employee, Count Two of the Underlying Complaint would have no purpose and, indeed, be moot.

In order to demonstrate that Defendant Ciccone was Martinez's employer despite the most clear and obvious reading of the Underlying Complaint, Plaintiff Vermont Mutual raises issues concerning a series of allegations in the Underlying Complaint that, in Plaintiff's reasoning, suggest that an argument could be made that Defendants were in fact Martinez's employers. Such allegations include statements claiming that Defendant Ciccone "would personally exert direct or concurrent *supervisory* control of the work site and construction premises" and that Defendants "exercised possession and control of the work site ... including providing some [fall protection] harnesses." Plaintiff's Supplemental Brief [Doc. 50] at 4. From this, Plaintiff concludes that the allegations in the Underlying Complaint "taken as a whole ... describe the Ciccone defendants as having total control over the site, workers, and work conditions at the site." *Id.* at 6. Without citing any applicable Connecticut law regarding what evidence of supervision or control over a worker is necessary to establish or demonstrate an employer-employee relationship, Vermont Mutual instead claims that the allegations in the Underlying Complaint "*raise the likelihood that [external] facts (not allegations) will show* that one or more of the Ciccone defendants was Martinez's employer."

*Id.* (emphasis added). The Court again notes, however, that as discussed at length *supra,* the Court may not take facts external to those presented in the Underlying Complaint into consideration in its evaluation of Plaintiff's duty to defend. Rather, the Court is limited to the facts as alleged in the Underlying Complaint as read in conjunction with the Policy and potentially relevant exclusions therein.

Further, Plaintiff Vermont Mutual must meet a higher burden of proof than merely demonstrating that, in Plaintiff's own words, there is a "*likelihood* that facts" external to the Underlying Complaint "will show that" a Policy exclusion applies and therefore obviates Plaintiff's duty to defend Defendants in the Underlying Action. *Id.* (emphasis added). Under Connecticut law, "when an exclusion clause is relied upon to deny coverage, the insurer has the burden of demonstrating that the allegations of the [underlying] complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto*, *are subject to no other interpretation*." *Nationwide Mut. Ins. Co. v. McHugh*, 2001 WL 1706752 at *3 (Conn. Super. 2001 Dec. 19, 2001) (emphasis added) (citation omitted); *see also, e.g., R.E.O., Inc. v. Travelers Companies*, 1998 WL 285836 at *5 (Conn. Super. May 20, 1998); *Mikolinski v. Cumberland Mut. Fire Ins. Co.,* 1997 WL 723429 at *4 (Conn. Super. Nov. 10, 1997). Simply put, an insurer therefore "bears the 'burden of establishing that the [allegations of the] underlying complaint' demonstrate that an exclusion applies." *Nationwide Mut. Ins. Co. v. Pools by Design, Inc.*, 2009 WL 1663934 at *3 (Conn. Super. May 26, 2009) (quoting *Buell Industries, Inc. v. Greater New York Mutual Ins. Co.*, 259 Conn. 527, 552 (2002) and citing *Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 290 Conn. 767, 807 (2009)). Courts have readily acknowledged that this is a "heavy burden" for an insurer to meet, *EDO Corp. v. Newark Ins. Co.*, 878 F. Supp. 366, 372 (D. Conn. 1995), as if the allegations

contained within an underlying complaint fall "even possibly within the coverage" – i.e., and therefore even possibly outside of the relevant insurance policy exclusions – an insurer must defend. *Nationwide Mut. Ins. Co. Pools by Design, Inc.*, 2009 WL 1663934 at *3 (citation omitted).

In the case at bar, the Court finds that the allegations contained in the Underlying Complaint are more than sufficient to support the interpretation that Martinez was solely an employee of the subcontractor Rivera's, and not Defendant Ciccone's employee.  Because this reading of the Underlying Complaint is reasonable – and, if anything, the most obvious interpretation of the allegations contained therein – the Court need not and does not apply relevant law on what degree of control is necessary to constitute an employer-employee relationship to the facts as presented in the Underlying Complaint.  The reason for this is simple: even if relevant law provided an excellent *argument* for the conclusion that, under the allegations of the Underlying Complaint, Martinez was Defendants' employee in addition to or instead of being Rivera's employee – and the Court takes no position on whether an examination of the law would render such a result – nonetheless this would still be insufficient to meet Plaintiff's burden, which may only be met should the allegations not *possibly* be "subject to [any] other interpretation." *Id.* (citation omitted).  Regardless of any facts external to the Underlying Complaint (which the Court does not and cannot consider for this purpose), the Court finds that Plaintiff has not met its burden in demonstrating that the Policy's employer's liability exclusion clause when read in conjunction with the Underlying Complaint precludes Plaintiff's duty to defend Defendants in the Underlying Action.

The Court further notes that Plaintiff Vermont Mutual appears to *agree* that the Underlying Complaint may be reasonably read to state that Martinez was not an employee of the Defendants, but rather of Rivera.  Plaintiff acknowledges in its briefing that the Underlying Complaint had been

36

"artfully drafted to avoid the Policy's Employer's Liability exclusion." [Doc. 50] at 6.  Moreover, when applying the universal standard for an insurer's duty to defend under Connecticut law (which Plaintiff mistakenly claims only applies to an insurer's so-termed "initial duty to defend," as addressed *supra*), Plaintiff readily and repeatedly admits that it "is uncontested" that such a standard has been met in the case at bar, *Id.* at 7, going so far as to state that the Underlying Complaint has not only "been artfully drafted to trigger" this duty, *Id.* at 2, but does in fact "trigger" it.  *Id.* at 1.  The Court, Plaintiff, and Defendants are thus in agreement that the allegations contained in the Underlying Complaint can be read in such a way as to state that Martinez was Rivera's employee and not Defendant's employee – a fact that under Connecticut law in and of itself precludes any application of the Policy's employer's liability exclusion.

### 3.    Professional Services Exclusion in the Policy

In the Fifth Count of its Motion for Declaratory Judgment, Vermont Mutual contends that it is "entitled to a declaration that it does not have a duty to indemnify" Defendants because the monetary damages sought by Mr. Martinez are excluded from coverage by virtue of the insurance policy's exclusion for Professional Services. [Doc. 1] at 8-9.  Under the insurance policy's business liability coverage exclusion, damages for bodily injury "due to rendering or failure to render any professional service," including "[s]upervisory, inspection or engineering services" are exempted from coverage.  [Doc. 37-3] at 63.

The same principles of law cited *supra* with regard to insurance policy exclusions precluding an insurer's duty to defend its insured are applicable here – which is to say, "when an exclusion clause is relied upon to deny coverage, the insurer has the burden of demonstrating that the allegations of the [underlying] complaint cast that pleading solely and entirely within the policy

exclusions, and, further, that the allegations, *in toto*, *are subject to no other interpretation*." *Nationwide Mut. Ins. Co. v. McHugh*, 2001 WL 1706752 at *3 (Conn. Super. 2001 December 19, 2001) (emphasis added) (citation omitted); *see also, e.g., R.E.O., Inc. v. Travelers Companies*, 1998 WL 285836 at *5 (Conn. Super. May 20, 1998); *Mikolinski v. Cumberland Mut. Fire Ins. Co.,* 1997 WL 723429 at *4 (Conn. Super. November 10, 1997).

Plaintiff cites no applicable law regarding Connecticut interpretations of professional liability exclusions or their relevance to the allegations made in the Underlying Complaint. Rather, Plaintiff states that "[i]n short, the Policy's Professional Services ... exclusion[] *potentially* bar[s] coverage for each count of Martinez's Revised Complaint." [Doc. 50] at 7 (emphasis added) – and, specifically, that "the Policy's Professional Services exclusion *potentially* bars coverage for Martinez's claims in full." *Id.* at 5. As with the application of the employer's liability exclusion above, Plaintiff is using an inapposite standard – Vermont Mutual's burden is not to demonstrate that the Professional Services exclusion *could* bar a duty to defend; Vermont Mutual's burden is to unequivocally demonstrate that there is no way to read the allegations in the Underlying Complaint without reaching such a conclusion.

Plaintiff does not and cannot meet this high burden with regard to the Professional Services Policy exclusion. While allegations in the Underlying Complaint do suggest that Defendant Ciccone was playing a supervisory role at the worksite at which Martinez claims he was injured (e.g., "Ciccone ... would personally exert direct or concurrent supervisory control of the worksite and construction premises ..." [Doc. 55] at 34), and while consequently the Underlying Complaint may be read to state that Defendant Ciccone, a property owner with some alleged degree of construction knowledge, was participating in the supervision of work on his property, the Court notes that the

Policy's language concerning the Professional Services exclusion concerns damages or injuries that are the result of an insured Defendant's "*rendering or failing to render*" any Professional Service. [Doc. 37-3] at 63 (emphasis added).   The word "render" as used in the English language and as generally understood clearly implies a second party to whom something (in this case a service) is "rendered."

The legal "standard with respect to a policy's professional services exclusion is less explicitly stated under Connecticut law" than the standards applicable to some other insurance policy exclusions. *Berardino v. Hartford Underwriters Ins. Co.*, 2012 WL 1222356 at *6 (Conn. Super. March 13, 2012).   However, it appears that the "determinative question" in interpreting the professional services exclusion in an insurance policy "is the intent of the parties, that is, what coverage the ... [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy."  *National Grange Mutual Ins. Co. v. Santaniello*, 290 Conn. 81, 88 (2009); *see also Berardino v. Hartford Underwriters Ins. Co.*, 2012 WL 1222356 at *6-7 (quoting and analyzing same).  As discussed *supra,* Connecticut law holds that in cases in which there is "any ambiguity in the terms" of an insurance policy, such ambiguous terms ought to be construed in the insured's favor.  *Hartford Casualty Ins. Co. v. Litchfield Mutual Fire Ins. Co*, 274 Conn. 457, 463 (2005); *MH Lipiner & Son, Inc. v. Hanover Ins. Co.*, 869 F.3d 685, 687 (2d Cir. 1989); *see also Clinton v. Aetna Life & Sur. Co.*, 41 Conn. Super. 560, 563 (Conn. Sup. 1991) (any "ambiguous words or phrases in an insurance policy [ought to be] construed against the insurance company and in favor of coverage.").  Accordingly, the Court's goal here is to interpret the use of the language of the Professional Services exclusion as included within the Policy, including its use of the word "render," as would "a layman, rather than [as by] an experienced underwriter." *Jurrius v. Maccabees*

39

*Mut. Life Ins. Co.*, 587 F. Supp. 1301, 1305 (D. Conn. 1984). In other words, the Court must apply a "test of coverage" that seeks to determine "not what the insurer intended to cover but what a reasonable person in the position of the insured would understand to be covered." *Clinton v. Aetna Life & Sur. Co.*, 41 Conn. Supp. at 563.

As a preliminary matter, Court finds that the word "render" is too readily and clearly understood to mean that services ought to be rendered to a party other than the insured to apply it to the vague supervisory allegations made within the Underlying Complaint, which in a light most favorable to Plaintiff in this regard would be read as Defendant Ciccone rendering supervisory construction services to himself. The Court does not find it at all convincing that a property owner could render his professional services to individuals working on his property for him, either directly or as employees of a subcontractor, and Plaintiff has cited no case or precedent to indicate that the Court should find otherwise. Thus, due to the laws governing contract interpretation and due to the possibility of an interpretation of the Underlying Complaint that does not understand Defendant Ciccone to have been rendering "professional services" in the circumstances surrounding Martinez's alleged injury, the Court holds that Plaintiff Vermont Mutual does not and cannot demonstrate that the Professional Services exclusion in its Policy with Defendants defeats Plaintiff's duty to defend Defendants in the Underlying Action.

## IV.    Conclusion

For the forgoing reasons, Defendants' Motion for Summary Judgment [Doc. 37] on Counts Three and Five of Plaintiff's Complaint for Declaratory Judgment [Doc. 1] is GRANTED in all respects.

The Clerk is directed to enter judgment in favor of the Defendants and each of them, and against the Plaintiff, dismissing Counts Three and Five of the Complaint with prejudice.

It is SO ORDERED.


Dated: New Haven, Connecticut
October 22,  2012

*/s/ Charles S. Haight, Jr.*            ___
Charles S. Haight, Jr.
Senior United States District Judge

41